IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL NO. 2:13-cr-00039-RK-1 |
| v. | : |
| | : |
| MICHAEL J. SULLIVAN | : |
| MICHAEL LOWRY | : |
| ROBERT MULGREW | : |
| WILLIE SINGLETARY | : |
| THOMASINE TYNES | : |
| MARK A. BRUNO | : |
| WILLIAM HIRD | : |
| HENRY P. ALFANO | : |
| ROBERT MOY | : |

**MICHAEL J. SULLIVAN'S MOTION TO DISMISS
COUNTS 8, 11, 12, 19, 26, 34, 38, AND 39 OF THE
INDICTMENT FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant, Michael J. Sullivan, by and through his undersigned counsel, hereby

moves to dismiss Counts 8, 11, 12, 19, 26, 34, 38, and 39 of the indictment pursuant to Fed. R.

Crim. P. 12(b)(3)(B) for lack of subject matter jurisdiction. In support, defendant relies on the

accompanying memorandum of law, incorporated herein by reference.

Date: April 1, 2014

/s/ Henry E. Hockeimer, Jr.
Henry E. Hockeimer, Jr. (I.D. No. 86768)
hockeimerh@ballardspahr.com
Jessica M. Anthony (I.D. No. 203842)
anthonyj@ballardspahr.com
Terence M. Grugan (I.D. No. 307211)
grugant@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
*Counsel for Defendant Michael J. Sullivan*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 2:13-cr-00039-RK-1 |
| v. | : | |
| | : | |
| MICHAEL J. SULLIVAN | : | |
| MICHAEL LOWRY | : | |
| ROBERT MULGREW | : | |
| WILLIE SINGLETARY | : | |
| THOMASINE TYNES | : | |
| MARK A. BRUNO | : | |
| WILLIAM HIRD | : | |
| HENRY P. ALFANO | : | |
| ROBERT MOY | : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, MICHAEL J. SULLIVAN'S MOTION TO DISMISS COUNTS 8, 11, 12, 19, 26, 34, 38, AND 39  OF THE INDICTMENT FOR LACK OF SUBJECT MATTER JURISDICTION

## I.    INTRODUCTION

The government has charged Defendant, Michael J. Sullivan ("Sullivan"), with conspiracy to commit wire and mail fraud under 18 U.S.C. §1349, eighteen counts of wire fraud under 18 U.S.C. §1343, and three counts of mail fraud under 18 U.S.C. § 1341.  Eight of the eighteen substantive wire fraud counts[1] – counts 8, 11, 12, 19, 26, 34, 38, and 39 – relate to wire transmissions that not only occurred after the alleged fraud had been completed but, according to the Indictment, would have been made in the normal course of business whether or not the alleged scheme to defraud existed.  Under binding Supreme Court and Third Circuit precedent, such routine and required wire transmissions occurring after the object of the alleged scheme – in

---

[1]    Count 3 of the Indictment is predicated on a telephone call between Defendants Alfano and Hird, to which Sullivan was not a party.  Counts 9, 10, and 14 allege that Sullivan was party to an interstate communication.  Counts 13, 15, 18, 25, 33, and 37 are predicated on unnamed Traffic Court employees "access[ing] the Traffic Court computer system to determine which judges were presiding over specific cases for that specific week."

this case the favorable adjudication of Traffic Court violations – has been completed, cannot be, as a matter of law, "in furtherance" of the alleged scheme. As such, those wire fraud counts must be dismissed.

The thrust of the scheme to defraud in the Indictment alleges that Sullivan and other former judges and employees of the Philadelphia Traffic Court ("Traffic Court") facilitated requests for preferential treatment concerning matters brought before the Traffic Court. (See Indictment at ¶¶ 29-32). While the government broadly asserts that Sullivan was a part of "a culture of 'ticket-fixing' at Traffic Court" and sets forth its allegations against the defendants in terms of an all-encompassing conspiracy, it has charged each allegedly-"fixed" ticket as separate and substantive counts of federal wire fraud. Accordingly, for each individual ticket-adjudication charged as a substantive wire fraud offense, the government must prove each element of wire fraud, including that Sullivan used a wire transmission to further the alleged scheme to "fix" each ticket charged in these substantive counts.

With respect to Counts 8, 11, 12, 19, 26, 34, 38, and 39, the government cannot do so. The alleged wire fraud in each of those counts relate to separate transmissions known as the "Interstate transmission of adjudication batch." (Indictment at p. 58-62). The government explains what is meant by "Interstate transmission of adjudication batch" in paragraph 11 of the Indictment, stating:

> Every adjudication was entered into a database maintained by the
> Traffic Court computer system. Thereafter, the ticketholder's file
> was electronically sent to XEROX (formerly ACS), an information
> technology contractor, located in Tarrytown, New York. Within
> several days of every adjudication of a ticket, XEROX (formerly
> ACS) forwarded the disposition file electronically to PennDOT in
> Harrisburg.

(Indictment at ¶ 11). In other words, according to the Indictment, the wire transmissions giving rise to counts 8, 11, 12, 19, 26, 34, 38, and 39 is the routine transmission of _every_ Traffic Court

adjudication, in the ordinary course of the Traffic Court's business, to PennDOT, which necessarily occurred *after* each ticket subject to those counts was adjudicated; that is, after the alleged scheme to defraud – the favorable adjudication of Traffic Court violations – had been completed.  However, according to binding Supreme Court and Third Circuit precedent, wire transmissions required as a part of the Traffic Court's exercise of its normal responsibilities cannot, as a matter of law, support a wire fraud charge.  Moreover, the Third Circuit has held, in a "ticket-fixing" case indistinguishable from this matter, that wire transmissions occurring after the object of the alleged scheme – here the favorable adjudication of Traffic Court violations – has been completed, are not, as a matter of law, "in furtherance" of the alleged scheme.

The wire transmissions described in paragraph 11 of the Indictment cannot as a matter of law support wire fraud charges.  Without a valid wire transmission to support counts 8, 11, 12, 19, 26, 34, 38, and 39, there is no federal jurisdictional element to these charges and this Court therefore lacks subject matter jurisdiction over them.

## II.   DISCUSSION

### A.   Counts Of The Indictment Over Which The Court Lacks Subject Matter Jurisdiction Must Be Dismissed.

Under Rule 12(b)(3)(B), the Court must dismiss any counts alleged in the Indictment that fail to invoke the Court's subject matter jurisdiction.  Concerning criminal matters, this Court has subject matter jurisdiction over only "crimes against the laws of the United States."  18 U.S.C. § 3231.  The federal wire fraud statute, 18 U.S.C. § 1343, contains a jurisdictional element permitting the federal government's exercise of jurisdiction over only those "scheme[s] or artifice[s] to defraud" involving the "use of a wire transmission *for the purpose of executing*, or attempting to execute," the alleged scheme.  United States v. Yusef, 536 F.3d 178, 188 n.14 (3d Cir. 2008) (emphasis added).  This jurisdictional element arises from

Constitutional limitations on congressional power over intrastate activities under the Commerce Clause. United States v. Clark, 88 F. Supp. 2d 417, 421 (D.V.I. 2000).

> 1. Counts 8, 11, 12, 19, 26, 34, 38, And 39 Must Be Dismissed Because The Wire Transmissions Set Forth In Paragraph 11 Of The Indictment Cannot Be "In Furtherance" Of A Scheme To Defraud As A Matter Of Law.

As explained by the Supreme Court: "The [wire] fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the [wires] is part of the execution of the fraud." Kann v. United States, 323 U.S. 88, 95 (1944). The Third Circuit has explained that satisfying this jurisdictional element turns on "the dependence in some way of the completion of the scheme or the prevention of its detection on the mailings in question." United States v. Tarnopol, 561 F.2d 466, 471-72 (3d Cir. 1977). In outlining two unequivocal limitations to the reach of the federal mail and wire fraud statutes,[2] the Third Circuit has stated:

> [M]ailings taking place after the object of the scheme has been accomplished, or before its accomplishment has begun, are not sufficiently closely related to the scheme to support a mail fraud prosecution. Nor are routine mailings required by law which are themselves intrinsically innocent even though they take place during the course of carrying out a fraudulent scheme.

Id. (citing Parr v. United States, 363 U.S. 370, 385 (1960)

In Parr, the Supreme Court reversed a mail fraud conviction holding that mailings made as an ordinary part of an effort to collect revenue cannot, as a matter of law, support a mail fraud conviction even though the scheme to defraud could not have succeeded without the mailings. Parr, 363 U.S. at 390-91. There, defendants, members of a school district board of trustees empowered with assessing and collecting taxes, were charged with a scheme to embezzle funds from a public school district. Id. at 374. The mailings alleged to have been

---

[2] For purposes of analyzing the wire fraud statute, cases involving the nearly identical mail fraud statute are sufficiently analogous. United States v. Frey, 42 F.3d 795, 797 n.2 (3d Cir. 1994) ("the mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses.").

made in furtherance of the scheme included notices of tax assessments to district residents and tax payments sent in response. Id. at 375. Though the Court expressed "no doubt that the indictment charged and the evidence tended strongly to show that petitioners devised and practiced a brazen scheme to defraud" it noted that "these were essentially state crimes and could only become federal ones, under the mail fraud statute, only if the mails were used 'for the purpose of executing the scheme.'" Id. at 385. The Court held that the mailings alleged were not 'for the purpose of executing the scheme' because "the district was legally compelled to assess and collect taxes for school purposes, and the taxpayers were legally obligated to respond." Id. Noting the strength of the government's showing concerning the defendants' "bad" behavior, the Court emphasized, "the showing, however convincing, that state crimes of misappropriation, conversion, embezzlement and theft were committed does not establish the federal crime of using the mails to defraud." Id. at 393-94.

The Third Circuit has applied these principles in reversing a defendant's mail fraud conviction for failure to satisfy the jurisdictional element of the mail fraud statute in an identical matter to this case. In United States v. Cross, the government prosecuted "a District Judge who presided over one of the courts of the minor judiciary" and a "supervisor of the Statutory Appeals Court" alleging that the defendants "conspired to influence the decisions of the court in a variety of ways. Most frequently, they would utilize their authority and access to the decision maker to assure resolution of the case in the defendants' favor." 128 F.3d 145, 146 (3d Cir. 1997). Evidence at trial indicated that the defendants had employed "tactics [that] led to automatic not-guilty verdicts."[3] Id. In attempting to bring the defendant's scheme to favorably

---

[3] Unlike this case, evidence was presented in Cross that "gifts had been offered in exchange for promises by Cross to reduce or eliminate citations and to influence hearings." Cross, 128 F.2d at 147. In contrast, there are no allegations whatsoever that Sullivan was offered, received, or accepted anything in exchange for adjudicating traffic citations.

adjudicate matters before the Statutory Court of Appeal within the federal mail fraud statute, the government alleged that "the defendants would cause the following documents to be sent through the United States mail by the Statutory Appeals Court to the parties and the Department of Transportation ("DOT"): (1) notices of dismissals, (2) notices of convictions, and (3) 'notices of favorable dispositions.'" Id. at 149-50.

Rejecting the government's theory, the Third Circuit held that the submission of adjudications to the Department of Transportation in the routine course of the court's business after the adjudications were made could not, as a matter of law, support mail fraud charges for two reasons. First, quoting the Supreme Court's observation in Parr "that no case has ever held that 'a thing which the law required to be mailed may be regarded as mailed for the purpose of executing a plot or scheme to defraud,'" id. at 151 (quoting Parr, 363 U.S. at 390), the Third Circuit explained that "[t]he Statutory Appeals Court was charged by law with adjudicating specified cases . . . [and i]ts mailings to the parties and the DOT, like the tax mailing in Parr, were required by law as a part of the court's exercise of its responsibilities." Id. at 151. Thus, "[a]s in Parr, the relevant mailings would, of necessity, have been made whether or not the conspiracy existed, and they would have performed precisely the same function in the absence of the conspiracy that they performed during its continuance." Id. Accordingly, the Court held that "legally required mailings in circumstances like those in this case cannot be deemed to have been made 'for the purpose of executing' a fraudulent scheme." Id. at 152.

Second, the Third Circuit explained that because the government had charged a conspiracy to provide favorable adjudications to certain individuals appearing before the defendants, the objective of the scheme "would 'reach fruition' when the defendants' efforts caused a different disposition by the court than would otherwise have been made." Id. at 151. Thus, "by the time notices of dispositions were dispatched, the conspiracy had either succeeded

or failed, and the legal consequences of an acquittal or conviction had been established, and the routine reporting of the dispositions simply was not a part of the conspirators' execution of their scheme." Id. at 151-52. In other words, the Third Circuit held that in a "ticket-fixing" conspiracy, the object of the conspiracy is achieved upon the "fixed" adjudication, thus mailings (or wire transmissions) made after the adjudication cannot, as a matter of law, be "for the purpose of executing" the scheme.

Beyond the fact that the defendants in Cross were charged with accepting gifts in exchange for favorably adjudicating matters before them while Sullivan faces no such allegations at all, the facts and the government's theory of the offense in that case mirror the facts and the government's theory of the offense here. Thus, prosecution of counts 8, 11, 12, 19, 26, 34, 38 and 39 in this Court is plainly foreclosed by the Third Circuit's decision in Cross.

The "scheme" alleged here is identical to that prosecuted in Cross "to influence the decisions of the court in a variety of ways." Cross, 128 F.3d at 146. The government alleges that Sullivan "used [his] position at Traffic Court to manipulate Traffic Court cases outside the judicial process, thereby achieving favorable outcomes on traffic citations for politically connected individuals, friends, family members, associates, and others with influential positions." (Indictment at ¶ 30). The execution of the alleged "scheme" "consisted of: (1) dismissing tickets outright; (2) finding the ticketholders not guilty after a 'show' hearing; (3) adjudicating the ticket in a manner to reduce fines and avoid the assignment of points to a driver's record; and (4) obtaining continuances of trial dates to 'judge-shop,'" that is find a Traffic Court judge who would accede to a request for preferential treatment." (Id.).

Moreover, the government's jurisdictional theory here is precisely that rejected by the Third Circuit. As noted, the government attempts to fit Sullivan's allegedly biased adjudication of traffic citations into the limited scope of the federal wire fraud statute by alleging

that "[e]very adjudication was entered into a database maintained by the Traffic Court computer system. Thereafter, the ticketholder's file was electronically sent to XEROX (formerly ACS), an information technology contractor, located in Tarrytown, New York. Within several days of every adjudication of a ticket, XEROX (formerly ACS) forwarded the disposition file electronically to PennDOT in Harrisburg." That is, the government contends that the alleged "fixing" of the tickets underlying counts 8, 11, 12, 19, 26, 34, 38, and 39 became federal wire fraud because *every adjudication of every offense* in the Traffic Court was electronically sent to PennDOT via Tarrytown, New York. Like the mailings in Parr and in Cross, the government concedes that "the interstate transmission of adjudication batch" giving rise to these counts would have occurred whether or not any "scheme to defraud" existed.

The government simply cannot escape the dispositive force of the Cross decision. Like in Cross, the wire transmission underlying counts 8, 11, 12, 19, 26, 34, 38, and 39, was the routine transmission of the adjudications to PennDOT after each adjudication occurred. Because, according to the Indictment, every adjudication in the Traffic Court was electronically transmitted to PennDOT, (Indictment at ¶ 11), these wire transmissions were nothing more than "an integral and necessary part of the [Traffic Court's] adjudication of cases." Cross, 128 F.3d at 150. Moreover, by the government's own admission, the objective of each alleged scheme was "achieving favorable outcomes on traffic citations for politically connected individuals, friends, family members, associates, and others with influential positions." (Indictment at ¶ 30). Therefore, the "scheme" was complete upon the adjudication of each violation. Thus, as the Third Circuit held in Cross, by the time the adjudication was transmitted to PennDOT, the scheme "had either succeeded or failed, the legal consequences of an acquittal or conviction had been established, and the routine reporting of the dispositions simply was not part of the execution of the scheme." Id. at 151-52.

8

Accepting the allegations in the Indictment as true, United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002), the government's theory of violation in counts 8, 11, 12, 19, 26, 34, 38, and 39 is fatally deficient as a matter of law and these counts must be dismissed. Importantly, the government cannot argue that this result should be avoided until trial because it can develop no facts to salvage these counts. Indeed, the government's failure to plead a "scheme or artifice to defraud" that falls within the subject matter jurisdiction of this Court is precisely the type of failure intended to be addressed on a motion to dismiss because "if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute," a motion to dismiss for failure to state an offense is properly granted. Id. See also Fasulo v. United States, 272 U.S. 620, 629 (1926) (noting that for mail fraud violations, "before one can be punished, it must be shown that his case is plainly within the statute").

## III. CONCLUSION

Because this Court lacks subject matter jurisdiction over counts 8, 11, 12, 19, 26, 34, 38, and 39 of the Indictment, those counts should be dismissed.

Date: April 1, 2014                                   Respectfully submitted,


                                                      /s/ Henry E. Hockeimer, Jr.
                                                      Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                                      hockeimerh@ballardspahr.com
                                                      Jessica M. Anthony (I.D. No. 203842)
                                                      anthonyj@ballardspahr.com
                                                      Terence M. Grugan (I.D. No. 307211)
                                                      grugant@ballardspahr.com
                                                      Ballard Spahr LLP
                                                      1735 Market Street, 51st Floor
                                                      Philadelphia, PA 19103
                                                      (215) 665-8500
                                                      *Counsel for Defendant Michael J. Sullivan*

9

## CERTIFICATE OF SERVICE

I, Terence M. Grugan, Esquire, hereby certify that on April 1, 2014, I served a

true and correct copy of the foregoing Defendant's Motion to Dismiss Counts 8, 11, 12, 19, 26,

34, 38, and 39 of the Indictment for Lack of Subject Matter Jurisdiction by electronic notification

upon all counsel of record and by electronic notification and first-class mail, postage pre-paid

upon the following counsel:

Denise S. Wolf
Anthony Wzorek
U.S. Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Zane D. Memeger
U.S. Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

/s/ Terence M. Grugan
Terence M. Grugan

Dated: April 1, 2014